

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-13-00246-CV**

**IN RE ANDREA HOGARD**

**From the County Court at Law**
**Walker County, Texas**
**Trial Court No. 9627**

## MEMORANDUM OPINION

Andrea Hogard seeks mandamus relief from a temporary order that appoints her parents, Jerald and Claudette Griffin,[1] as temporary managing conservators of Andrea's child, B.N.D. Andrea complains that the trial court abused its discretion by denying her plea to the jurisdiction, by failing to dismiss the petition filed by the Griffins because the attached affidavits were insufficient, by granting the temporary order giving the Griffins the right to establish the domicile of B.N.D., by entering an order without specific periods of possession and access, and by ordering that all periods of possession by Andrea be supervised. Because we find that the trial court abused its discretion in making the temporary order, we conditionally grant relief.

---

[1] Jerald Griffin is now deceased.

In her first issue, Andrea complains that the trial court abused its discretion by denying her plea to the jurisdiction because the Griffins did not "properly plead or properly prove facts" to establish that they had standing to file the petition seeking conservatorship of B.N.D.

*Propriety of Mandamus Relief*

Mandamus is the appropriate mechanism to challenge temporary orders made while a child custody modification suit is pending because such orders are interlocutory and not appealable. *In re Mays-Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) (orig. proceeding); *Little v. Daggett*, 858 S.W.2d 368, 369 (Tex. 1993) (orig. proceeding); *In re Levay*, 179 S.W.3d 93, 95 (Tex. App.—San Antonio 2005, orig. proceeding). Generally, a writ of mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts," and "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id*. at 839.

*Standing*

A party seeking conservatorship of a child must have standing to seek such relief. *In re S.S.J.-J.*, 153 S.W.3d 132, 134 (Tex. App.—San Antonio 2004, no pet). "Standing is implicit in the concept of subject matter jurisdiction." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Because "[s]ubject matter

jurisdiction is essential to the authority of a court to decide a case," a party's lack of standing deprives the court of subject matter jurisdiction and renders subsequent trial court action void. *Id.*; *In re Smith*, 260 S.W.3d 568, 572 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding).

A party's standing to seek relief is a question of law we review *de novo*. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004); *S.S.J.-J.*, 153 S.W.3d at 134. When, as in this case, the trial court does not make separate findings of fact and conclusions of law, we imply the findings necessary to support the judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). We review the entire record to determine if the trial court's implied findings are supported by any evidence. *In re Vogel*, 261 S.W.3d 917, 921-22 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding).

When standing has been conferred by statute, the statute itself serves as the proper framework for a standing analysis. *In re Sullivan*, 157 S.W.3d 911, 915 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding [mand. denied]); *Smith*, 260 S.W.3d at 572. In the context of a suit affecting the parent-child relationship, standing is governed by the Texas Family Code, and "[t]he party seeking relief must allege and establish standing within the parameters of the language used in the statute." *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, pet. denied). When standing has been sufficiently alleged in the pleadings, and the jurisdictional challenge attacks the existence of jurisdictional facts, the trial court considers the evidence submitted by

the parties to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). The burden of proof on the issue of standing is on the party asserting standing. *In re Pringle*, 862 S.W.2d 722, 725 (Tex. App.—Tyler 1993, no writ). In a family law case, when the petitioner is statutorily required to establish standing with "satisfactory proof," the evidentiary standard is a preponderance of the evidence. *In re A.M.S.*, 277 S.W.3d 92, 96 (Tex. App.—Texarkana 2009, no pet.); *Von Behren v. Von Behren*, 800 S.W.2d 919, 921 (Tex. App.—San Antonio 1990, writ denied). The petitioner must show the facts establishing standing existed at the time suit was filed in the trial court. *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001); *Vogel*, 261 S.W.3d at 921. If the petitioner fails to meet his burden, the trial court must dismiss the suit. *In re M.T.C.*, 299 S.W.3d 474, 480 (Tex. App.—Texarkana 2009, no pet.).

Standing to file a petition seeking conservatorship of a child relevant to this proceeding is governed by section 102.004 of the Texas Family Code. That section provides:

§ 102.004. Standing for Grandparent or Other Person

(a) In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:

(1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or

(2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit.

(b) An original suit requesting possessory conservatorship may not be filed by a grandparent or other person. However, the court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

(c) Possession of or access to a child by a grandparent is governed by the standards established by Chapter 153.

TEX. FAM. CODE ANN. § 102.004 (West 2008).

In order to show "that appointment of the parent as managing conservator would significantly impair the child, either physically or emotionally," the nonparent must "offer evidence of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child." *Lewelling v. Lewelling*, 796 S.W.2d 164, 167(Tex. 1990) (construing section 153.131 of the Family Code). To meet this burden, the nonparent must present evidence of "specific, identifiable behavior or conduct of the parent," as shown by "specific acts or omissions," and evidence that such acts or omissions "will probably cause that harm." *Critz v. Critz*, 297 S.W.3d 464, 474 (Tex. App.—Fort Worth 2009, no pet.). The evidence must support a logical inference that the specific, identifiable behavior or conduct will probably result in the child being emotionally impaired or physically harmed. *Whitworth*, 222 S.W.3d at 623. The link "may not be based on evidence which merely raises a surmise or

speculation of possible harm." *Id.*; *In re M.W.*, 959 S.W.2d 661, 665 (Tex. App.—Tyler 1997, writ denied). The non-parent's burden is not met by evidence that shows they would be a better custodian of the child or that they have a strong and on-going relationship with the child. *See Critz*, 297 S.W.3d at 474-75. Further, evidence of past misconduct alone is insufficient. *Critz*, 297 S.W.3d at 475. "If the parent is presently a suitable person to have custody, the fact that there was a time in the past when the parent would not have been a proper person to have such custody is not controlling." *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi 1992, writ denied).

*Facts*

The Griffins filed a petition seeking to be named the managing conservators of B.N.D. and sought temporary orders to give them the right to establish the domicile of B.N.D. B.N.D., who was ten years old at that time, had been residing with the Griffins for over two months at that time.

At the temporary orders hearing, the evidence showed that some months prior to the hearing, Andrea's husband, Jeff Hogard, had pushed B.N.D.'s face into a toilet that had not been flushed as punishment one time. Additionally, Jeff was mean to B.N.D. and threatened to not sign a paper B.N.D. needed signed and returned to the school unless she stopped telling Andrea about the things he was doing and saying to B.N.D. Claudette Griffin stated that Andrea did not do anything regarding the toilet incident when she found out about it shortly after it happened. However, according to Andrea,

she and B.N.D. left the home when she found out about the toilet incident, and it was undisputed that the Griffins helped Andrea get an apartment for them when she separated from Jeff.

After approximately five and a half months in the apartment, Andrea and B.N.D. moved out to live in the country in a mobile home owned by a man Andrea was involved with named Billy Busa. While living there, B.N.D. was required to feed and water a shoat that Billy used for training his dogs to hunt wild hogs. B.N.D. was frightened of the shoat but Andrea forced her to be in the pen where the shoat was kept to feed and water it. Andrea was present and testified that she would have been able to lift B.N.D. out of the pen if there was trouble, but that the pen was designed in such a way that the shoat could not get to B.N.D. while she was feeding it. Additionally, B.N.D. did not like Billy or the way that her mother acted indifferently toward her when Billy was around.

B.N.D. had surgery to remove a tumor from her toe which required her to be out of school for approximately four weeks prior to the incident with the signature on the test, which was many months prior to the temporary orders hearing. B.N.D. had nightmares about Jeff and his adult son coming and harming her. According to an affidavit executed by B.N.D. attached to the Griffins' pleadings, B.N.D. stated that she wanted to remain with the Griffins because she felt safe and happy with them.

Andrea had attempted to commit suicide twice in 2007, and was away from the residence with Jeff because she worked 70-100 hours a week at multiple jobs. B.N.D. was left in Jeff's care due to Andrea's work schedule. There was no evidence of other suicide attempts by Andrea or other mental illness. Andrea testified that she had been treated for depression at the time of the suicide attempts.

We find that the evidence presented to the trial court was insufficient to establish that B.N.D.'s circumstances at the time of the filing of the petition would significantly impair her physical health or emotional development. Andrea had been separated from Jeff for a minimum of approximately eight months at the time of the filing of the petition, and she was in the process of divorcing Jeff at that time. Her suicide attempts had occurred approximately five years prior to the filing of the petition. Because we find that the Griffins did not establish by a preponderance of the evidence that B.N.D.'s circumstances at the time of the filing of the petition would significantly impair her physical health or emotional development, the Griffins did not establish that they had standing to seek conservatorship of B.N.D. Therefore, the trial court should have dismissed this proceeding for lack of standing. We sustain issue one.

Because we have sustained Andrea's first issue, we do not reach issues two through five.

*Conclusion*

We conditionally grant Andrea Hogard's mandamus petition. A writ will issue only if Respondent fails to withdraw her order granting temporary conservatorship to the Griffins and fails to enter an order dismissing this proceeding within fourteen days after the date of this opinion.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Conditionally Granted
Opinion delivered and filed October 10, 2013
[OT06]